# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | |
|---|---|
| **TERRY JOE FIELDS** | **CIVIL ACTION NO. 08-1269-P** |
| **VERSUS** | **JUDGE HICKS** |
| **ANTHONY BATSON, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## REPORT AND RECOMMENDATION

This matter has been referred to the undersigned magistrate judge for review, report and recommendation in accordance with 28 U.S.C. §636(b)(1)(B).

## STATEMENT OF CLAIM

Before the Court is a civil rights action filed in forma pauperis by pro se plaintiff Terry Joe Fields ("Plaintiff"), pursuant to 42 U.S.C. §1983. This complaint was received and filed in this Court on August 26, 2008. Plaintiff is incarcerated at the David Wade Correctional Center in Homer, Louisiana. He names Anthony Batson, Susan Tucker, Wayne Millus, Beth Florentaine and Jerry Goodwin as defendants.

Plaintiff claims that on May 21, 2006, he was transferred from David Wade Correctional Center to Forcht Wade Correctional Center for security reasons.

Plaintiff claims that on March 26, 2008, an administrative segregation classification hearing was conducted and he was upgraded from DD extended lock down to the working cell block. He claims that on April 10, 2008, an administrative segregation classification hearing was conducted and he was denied eligibility for reclassification because be had been assigned to the working cell block for less than 30 days. He claims that on April 17, 2008,

an administrative segregation classification hearing was conducted and he was denied reassignment and the prescribed period for rehearing was increased from 30 days to 60 days.

Plaintiff claims that on June 7, 2008, Classification Officer Reshard Bistro informed him that he was going to be transferred to the Forcht Wade Correctional Center general population. He claims he never was transferred to the general population.

Plaintiff claims that on June 21, 2008, he spoke with Lt. Col. George Savage because he had not had an administrative segregation review board hearing since April 17, 2008. He claims Lt. Col. Savage instructed him to file a grievance in the administrative remedy procedure. Plaintiff claims that on June 22, 2008, he filed a grievance in the administrative remedy procedure. He claims that in said grievance, he complained that the review board was discriminating against him. He claims that on June 23, 2008, Wayne Millus replied to his grievance stating that lock down review board decisions were not able to be reviewed in the administrative remedy procedure. He claims this response violated his constitutional rights.

Plaintiff claims that on June 24, 2008, he filed a grievance in the administrative remedy procedure. He claims that in said grievance, he complained of a Fourteenth Amendment violation, an Eighth Amendment violation, a Title VII violation and a La. R.S. 14:134.2 violation. He claims his grievance was not processed. He claims Wayne Millus is responsible for processing all grievances in the administrative remedy procedure.

Plaintiff claims that on July 8, 2008, he filed a grievance in the administrative remedy procedure. He claims his grievance was not processed.

Plaintiff claims that on July 10, 2008, he spoke with Classification Officer Debbie Millus. He claims Debbie Millus told him that Beth Florentaine blew her down when she asked why he was still in segregation lock down after completing his sentence and meeting the requirements to be placed in general population.

Plaintiff states that on July 12, 2008, he wrote Warden Batson a letter in which he asked for mercy and fair treatment. He claims Warden Batson did not respond to his letter.

Plaintiff claims that on July 13, 2008, Classification Officer Reshard Bristo told him that Beth Florentaine was transferring him to David Wade Correctional Center. He claims Bistro stated that he informed Florentaine that he could not be transferred because he had enemies at David Wade Correctional Center. Plaintiff claims he sent a letter to Venetia Michael regarding the transfer and he received no reply.

Plaintiff claims that on July 21, 2008, he was transferred to David Wade Correctional Center. He claims he was transferred because he filed a grievance in the administrative remedy procedure. He claims he spoke to Lonnie Nail regarding his situation. He claims Nail informed him that he was going to be placed in administrative segregation lock down because his prison record had not been transferred with him.

Plaintiff claims that on July 22, 2008, he filed a grievance in the administrative remedy procedure regarding his enemies and safety concerns. He claims Tommy Garrett failed to properly perform his duties and rejected his grievance as a Forcht Wade Correctional Center matter.

Plaintiff claims that on August 12, 2008, he was called to Jamie Fussell's office after he was placed on DD ext/ld for his Forcht Wade Correctional Center violation. He claims Jamie Fussell and Lonnie Nail informed him that he was being placed in the working cell block because one of his known enemies had been placed on DD ext/ld. He claims that he informed Fussell that he had completed his punitive sanction at FWCC and should be placed in the general population. He claims Fussell informed him that an inmate could not be transferred from DD ext/ld to general population and refused his request.

Plaintiff claims he is being harshly punished because he is black. He claims white inmates who are confined for the same violations are treated differently.

Accordingly, Plaintiff seeks a declaratory judgment, injunctive relief, and compensatory and punitive damages.

## LAW AND ANALYSIS

**Due Process in the Disciplinary Process**

Plaintiff complains that at his April 17, 2008 administrative segregation classification hearing, he was denied reassignment and the prescribed period for rehearing was increased from 30 days to 60 days. To the extent Plaintiff contends he was punished without due process, that claim is not cognizable.

In <u>Sandin v. Connor</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court clarified when due process protections attach to the prison disciplinary process. The Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not afford an inmate a protected liberty interest that would entitle the inmate to

procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" and the duration of the prisoner's original sentence is not affected. Id. 132 L.Ed.2d at 431. Under the guidance provided by Sandin, the Fifth Circuit has held that as a general rule, only sanctions which result in loss of good time credit or which otherwise directly and adversely affect release will implicate a constitutionally protected liberty interest. Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995). Moreover, in commenting on Sandin, the Fifth Circuit noted that liberty interests which are protected by the Due Process Clause are generally limited to actions which affect the quantity of time rather than the quality of time served by a prisoner. Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) citing Sandin, 115 S.Ct. at 2297.

Plaintiff in the instant case does not allege that the disciplinary action affected the duration of his sentence or that the disciplinary sentence was atypical of the prison environment. To the contrary, Plaintiff's allegations concern the continuation of a working cell block sentence and the prescribed period for a hearing which is far from "extraordinary." This Court finds that under Sandin, Orellana and Madison, an extension of a working cell block sentence and a change in the prescribed time for a hearing does not constitute the type of atypical punishment that presents a significant deprivation which would implicate due process concerns.

Accordingly, Plaintiff's claims that he was punished without due process of law are without merit and should be dismissed with prejudice as frivolous.

**Classification and Place of Incarceration**

Plaintiff complains that he was not transferred from segregation lock down after completing his sentence and meeting the requirements to be placed in general population. He complains that he was denied reassignment from the working cell block. He further complains that he was not transferred to the general population even though he had been informed that he would be. Plaintiff complains he was transferred to David Wade Correctional Center even though he had known enemies incarcerated there. Plaintiff complains he was placed in the working cell block and not the general population. These are not claims that this Court can resolve. Federal courts should not, under the guise of enforcing constitutional standards, assume the superintendence of state prison administration. See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds). Thus, this Court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline and security in prison. See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials. See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990). "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification. In

addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." <u>Luken v. Scott</u>, 71 F.3d 192, 193 (5th Cir. 1995) (citing <u>Meachum v. Fano</u>, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)).

The United States Supreme Court has held that it is for state prison authorities to decide where a state prisoner is to be incarcerated, and that a prisoner has no right to challenge his place of incarceration. <u>See</u> <u>Olim v. Wakinekona</u>, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Under <u>Olim</u> and <u>Meachum</u>, Plaintiff has no right to challenge his transfer from Forcht Wade Correctional Center to David Wade Correctional Center.

Accordingly, Plaintiff's claims regarding his classification and place of incarceration are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Retaliation**

Plaintiff claims he was transferred to David Wade Correctional Center in retaliation for his filing of a grievance in the administrative remedy procedure. Plaintiff claims he has known enemies at David Wade Correctional Center. Plaintiff admits that when he was transferred to David Wade Correctional Center he was placed in administrative segregation lock down. He further admits that prison officials transferred him to the working cell block when one his known enemies was placed in lock down. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident–the transfer to David Wade

Correctional Center-would not have occurred. Woods v. Smith, 60 F.3d 1161 (5th Cir. 1995), citing Mt. Healthy City School Board District Bd. Of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

As shown above, Plaintiff's constitutional rights have not been shown to have been violated by his place of incarceration or prison classification. Moreover, the retaliatory motive alleged by Plaintiff is entirely conclusory as he provides no specific allegations showing that "but for" this motive he would not have been transferred to David Wade Correctional Center.

Accordingly, Plaintiff's claims regarding retaliation should be dismissed with prejudice as frivolous.

**Administrative Remedy Procedure**

Plaintiff complains his grievances were rejected and/or not processed in violation of his constitutional rights. Inmates do not have a constitutionally protected right to a prison administrative grievance procedure. See Oladipupo v. Austin, et al., 104 F.Supp.2d 626 (United States District Court, Western District of Louisiana 4/24/00); Brown v. Dodson, et al., 863 F. Supp. 284 (United States District Court, Western District of Virginia 6/2/94); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). A prison official's failure to comply with a state administrative grievance procedure is not actionable under Section 1983 because a state administrative grievance procedure does not confer any substantive constitutional right upon prison inmates. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231. Furthermore, state administrative grievance

procedures are separate and distinct from state and federal legal procedures. Thus, a prison official's failure to comply with state administrative grievance procedures does not compromise an inmate's right of access to the courts. Flick, supra. Thus, insofar as Plaintiff alleges that the Defendants failed to comply with the prison administrative grievance procedure, those allegations, standing alone, do not provide an arguable basis for recovery under Section 1983.

Accordingly, these claims regarding the administrative remedy procedure should be dismissed with prejudice as frivolous.

**Discrimination**

Plaintiff claims he was harshly punished in the prison disciplinary proceedings because he is black. He claims white inmates who are confined for the same violations are treated differently. To prove a cause of action under 1983, Plaintiff must demonstrate that prison officials acted with a discriminatory purpose. Woods v. Edwards, 51 F.3d 577 (5th Cir. 1995). "Discriminatory purpose in an equal protection context implies that the decision maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." Id., citing United States v. Galloway, 951 F.2d 64, 65 (5th Cir. 1992).

Plaintiff has failed to allege a discriminatory purpose. He claims he was harshly punished because he was black. He further claims that white inmates confined for the same violations were treated differently. Plaintiff states no facts that indicate Defendants intended

to adversely impact his race. Rather, Plaintiff rests his claim only on his personal belief that discrimination played a role in his alleged harsh punishment.

Accordingly, Plaintiff has failed to allege a viable equal protection claim and this claim should be dismissed as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this Court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report

and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 26th day of January, 2009.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE